Argued and submitted November 26, 1990, affirmed July 3, 1991

Gregory P. LYNCH,
Personal Representative of
the Estate of Florine M. Johnson, deceased,
Sandra Lee Townsend, Leslie Margaret Dillow Lynch,
Elizabeth Lynn Thompson and Lisa Ann Johnson,
*Plaintiffs,*

*v.*

FIRST COLONY
LIFE INSURANCE COMPANY,
*Defendant,*

*and*

FIRST COLONY
LIFE INSURANCE COMPANY,
*Third-Party Plaintiff-Respondent,*

*v.*

UNDERWRITERS SERVICE
AGENCY N.W., INC.,
*Third-Party Defendant-Appellant.*

(82-15680; CA A60364)

814 P2d 552

James M. Callahan, Portland, argued the cause for appellant. With him on the briefs were Bittner & Barker, P.C., and Callahan & Shears, P.C., Portland.

Don G. Carter, Portland, argued the cause for respondent. With him on the brief was McEwen, Gisvold, Rankin & Stewart, Portland.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

**DEITS, J.**

As a third-party plaintiff, First Colony Life Insurance Company (First Colony), brought this action to recover from third-party defendant, Underwriters Service Agency N.W., Inc. (USA), damages resulting from USA's alleged breach of duties as an agent for First Colony. USA appeals the denial of its motions for directed verdict. We affirm.

In October, 1981, Florine Johnson contacted Wilson for the purpose of obtaining life insurance. Wilson was an insurance broker who, through USA, sold policies written by First Colony and others. Wilson submitted Johnson's application for a $300,000 policy, along with a $200 check from her, to USA. USA then forwarded the application and the check to First Colony. By letter of May 2, 1982, however, First Colony rejected the application, returned the check to Johnson and obtained her release. On May 13, an underwriter at First Colony advised USA that a standard rate policy was not available for Johnson, but that she might be able to obtain the insurance at a higher rate. On May 24, First Colony sent a memo to USA, requesting additional documents from Johnson, including an EKG, a blood analysis and a financial statement. On May 26, Bolton, a USA employee, asked Wilson if his client would be interested in a policy at the higher rate and told him what that rate would be. At that time, neither Wilson nor Bolton knew of the additional documentation requirements. After that conversation, Wilson told Johnson that First Colony had approved the policy and directed her to mail a premium check to him for $452.76, which she did.

On June 4, Bolton sent Wilson notice of the need for the additional documents. On June 8, Wilson came into USA's offices and asked that they contact First Colony to see if the need for the additional documents could be waived. First Colony refused. Shortly thereafter, Johnson's premium check for $452.76, dated May 31, was discovered in USA's offices. USA forwarded it, along with a cover memo dated June 10, to First Colony, which received the check at its Lynchburg, Virginia, office on June 29. On June 30, it returned Johnson's check to USA, with instructions to return the check to her and ask for a release on the policy. Johnson, who had suffered a serious heart attack on June 20, refused to accept it or to sign a release of liability. She died on October

21, 1982. Her estate sued First Colony, which settled that claim for $130,000.

First Colony then filed a third-party complaint against USA, seeking recovery of the amount paid to Johnson's estate. In a court trial, the court held that USA was liable to First Colony for that amount. The court found that Wilson had relied on assurances given him by USA when he told Johnson that her application would be accepted; that First Colony had advised USA not to accept, or permit to be accepted, any premium for insurance until First Colony had actually issued a policy; that, nevertheless, when Wilson delivered Johnson's check to USA, USA accepted it and failed to advise First Colony immediately; that, when USA did advise First Colony of the payment, it did so by mailing the check to First Colony's Lynchburg office instead of to its Los Angeles office, where the application was being processed; and that, by the time that First Colony discovered that USA and Wilson had accepted the premium, Johnson had suffered a stroke,[1] which left her uninsurable. The trial court concluded:

"1)   Defendant USA was at all times acting as the agent of First Colony.

"2)   Defendant USA, in its advice to Wilson that Mrs. Johnson's application would be accepted, in permitting Wilson to accept the premium payment, and, in turn, accepting the premium from Wilson without First Colony's knowledge or consent or without requiring that the premium be returned, failed to protect the interests of First Colony and carry out its duties as First Colony's agent.

"3)   As a result of defendant USA's violation of its duties to First Colony, First Colony reasonably incurred a loss of $130,000 in settling the claims brought by Mrs. Johnson's estate. The result of defendant USA's failure to fulfill its duty to First Colony were [sic] foreseeable and, as between First Colony and defendant USA, defendant USA should bear that cost under its contract with First Colony and as First Colony's agent. Defendant USA shall be liable to First Colony for damages in the amount of $130,000 together with interest at the legal rate from November 15, 1986."

---

[1] Although the court's findings indicate that Johnson suffered a stroke, the record suggests that it was a heart attack that made her uninsurable.

USA assigns error to the trial court's denial of its motions for directed verdict. We view the evidence[2] in the light most favorable to the nonmoving party, and we will reverse only if there was no evidence from which a factfinder could have found the necessary facts. *Brown v. J. C. Penney Co.*, 297 Or 695, 705, 688 P2d 811 (1984).

■      USA argues that there was insufficient evidence to support the conclusion that USA breached its duties as First Colony's agent or to support the conclusion that USA's actions caused First Colony's loss.[3] We hold that there was evidence to support both. First, there was evidence that USA's acceptance of Johnson's premium check violated USA's General Agent's contract with First Colony. Paragraph 5(a) of the contract provides:

> "The General Agent is NOT AUTHORIZED, and is expressly forbidden, to bind the Company by any promise or agreement, to incur any debt, expense or liability in its name or account, or to waive or alter any of the provisions of any policy issued by it."

By accepting Johnson's check, USA bound First Colony to a policy before it had authorized its issuance. In addition, the evidence shows that First Colony had issued policy bulletins that made it clear that application payments should not be accepted before delivery of the policy by First Colony, if the amount of insurance applied for, plus existing insurance with First Colony, exceeded $200,000. A letter was sent by First Colony to its general agents, including USA, that emphasized the importance of that policy.[4] USA's general manager

---

[2] The parties disagree about whether the transcript of the trial between First Colony and Johnson's estate is properly part of the record in this case. However, it is unnecessary to decide that question because, even without considering that transcript, there is sufficient evidence in the record to support the trial court's denial of USA's motions for directed verdict.

[3] First Colony's theory of recovery was based not only on the actions of USA but on actions of Wilson, as USA's agent. However, we conclude that the evidence of the acts of USA, alone, supports the conclusion that USA breached its duties to First Colony. It is unnecessary to address the issues concerning USA's responsibility for Wilson's actions. We understand the trial court to have concluded that USA's actions, independently of Wilson's, were a basis for the finding of liability.

[4] The letter said:

"We have recently been made acutely aware that our rules are not always being followed. These rules were formulated because the risk of liability is ever present when a premium deposit is accepted prior to policy delivery. While the

testified that USA was aware of that prohibition. There is evidence in the record supporting the conclusion that USA's acceptance of the check violated the General Agent's contract and First Colony's policies.

■■ There was also evidence that USA breached its duty to act with care and skill in its actions as First Colony's agent. *See Restatement (Second) Agency* 177, § 379 (1958). There was evidence from which a trier of fact could conclude that Wilson's misunderstanding regarding the acceptance of Johnson's application for insurance resulted from his conversations with employees of USA. USA argues that nothing that its employees said to Wilson would reasonably have caused him to believe that Johnson's application had been accepted, but there was evidence that Wilson was told that First Colony had unconditionally offered Johnson a policy at a higher rate. There also was testimony that USA had possession of Johnson's premium check for some time without realizing it. Bolton was not sure whether Wilson had sent it in the mail or dropped it off at USA's offices and did not know when it had been received. As a result, there was some delay in telling First Colony. There was also evidence that the check was sent by USA to the wrong First Colony office for processing, and the trial court so found. Because acceptance of Johnson's check, combined with Wilson's statements to her that her application had been accepted, bound First Colony, USA should have disclosed those events promptly to First Colony. The evidence of USA's failure to do so shows a breach of the duty to disclose relevant facts to the principal, First Colony. *See* Basye, "Agency—1961 Oregon Survey," 41 Or L Rev 189, 193 (1962).

■ Finally, USA argues that its motions for directed verdict should have been granted, because "[t]here was insufficient evidence that USA's handling of the premium

Conditional Receipt was designed to provide us protection in cases where a premium deposit was made, the courts over the past years have eroded much of this protection to the point where, in certain states, if we are holding money when death occurs, we almost certainly will be found liable.

"Enclosed is a GA bulletin No. 80-10 spelling out these rules including two recent changes which will take effect March 1. We solicit your help in making these rules work, particularly the rules concerning coverages in excess of $200,000 or risks rated table 8 or above. Your failure, or your broker's failure, to follow these rules could result in liability to you, or him, for policy benefits paid as a result of such actions."

deposit check was the cause of First Colony's loss." However, there was evidence that, had USA returned the check immediately to Johnson, instead of sending it on to First Colony, she would have received it before she suffered her heart attack and became uninsurable. The trial court's denial of the motions for directed verdict was proper.

Affirmed.